976 F.2d 1444
 298 U.S.App.D.C. 140
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
INDIANA AND MICHIGAN MUNICIPAL DISTRIBUTORS ASSOCIATION and
the City of Auburn, Indiana, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 91-1370.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 1, 1992.
 
 Before HARRY T. EDWARDS, KAREN LeCRAFT HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on the record from the Federal Energy Regulatory Commission and on the briefs by the parties and arguments by counsel. The court has accorded the arguments full consideration and determined the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review be denied.*
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b).
 
 MEMORANDUM
 
 4
 Petitioners City of Auburn, Indiana, and the Indiana and Michigan Municipal Distributors Association, an ad hoc organization of nine Indiana municipalities[1] and three Michigan municipalities,[2] (the Cities) seek review of FERC's decision permitting intervenor Indiana Michigan Power Company (I & M) to raise the Cities' electrical rates, effective October 21, 1990. The Cities contend that under the terms of a "most favored nations clause" in a settlement they reached with I & M, and which FERC approved, they were entitled to a rate increase moratorium until August 1, 1992, because such a moratorium was included in a settlement between I & M and the Wabash Valley Power Authority (Wabash Valley). Adopting FERC's reasonable interpretation of the two settlement agreements, we reject the Cities' challenge and deny their petition for review.
 
 
 5
 In October 1987 I & M filed with FERC proposed rate increases for the electrical power it sold to its customers, including the Cities and Wabash Valley. At that time both the Cities and Wabash Valley purchased full requirements power from I & M. By order issued December 15, 1987, FERC accepted I & M's rates for filing and made them effective December 22, 1987, subject to refund. City of Auburn v. Indiana Michigan Power Co., 41 F.E.R.C. p 61,310 (1987).
 
 
 6
 On August 31, 1988, Wabash Valley and I & M entered into a settlement agreement regarding the rate increase. Under that agreement Wabash Valley was to continue its past practice of purchasing full requirements power for one year, until August 1, 1989, paying the new rates I & M had sought, but thereafter, from August 1, 1989, through December 31, 1997, Wabash Valley was to purchase a fixed block of power at fixed demand rates, subject to change only in accordance with a specific adjustment clause that provided for the rates to be adjusted every three years, beginning in August 1, 1992, to reflect changes in the Department of Labor's producer price index.[3]
 
 
 7
 A short time later, on September 8, 1988, the Cities and I & M also reached a rate settlement. Under their settlement agreement, the Cities were to continue purchasing full requirements power at rates below those originally filed by I & M and accepted by FERC.[4] The agreement contained two additional provisions that are material here. The first was a moratorium clause which provided: "I & M will not, without the written consent of Cities, file any general increase in base rates to Cities which will seek an effective date prior to the earlier of (1) the in-service date of Rockport Plant Unit No. 2, or (2) January 1, 1990." Joint Appendix (JA) 12. The second provision was the so-called "most favored nations clause" (MFNC), which stated: "If I & M negotiates a settlement in any of its remaining consolidated rate dockets on terms that are more favorable to the customers affected by those dockets than the terms of this Agreement, I & M will amend this Agreement to provide to Cities the effect of the more favorable terms." JA 17. FERC approved the settlement agreement by letter order issued December 1, 1988. Indiana Michigan Power Co., 45 F.E.R.C. p 61,501 (1988).
 
 
 8
 On March 21, 1990, I & M filed with FERC a new rate increase request for various of its customers, including the Cities. On April 11, 1990, the Cities filed a "Motion to Intervene, Protest, Motion for Summary Disposition, Request for Rejection, and Request for Suspension of Proposed Tariff." In that document, the Cities objected to any rate increase, contending they were entitled under the MFNC to a rate increase moratorium lasting until August 1, 1992, because Wabash Valley had received such a moratorium in the triennial adjustment provision of its August 31, 1988, agreement with I & M. On March 25, 1991, the Cities and I & M reached a settlement in that case on all issues except the Cities' moratorium claim.
 
 
 9
 On May 18, 1990, FERC issued an order rejecting the Cities' moratorium argument and granting the requested increase, effective October 21, 1990 and subject to refund. Indiana Michigan Power Co., 51 F.E.R.C. p 61,191 (1990). On June 15, 1990, the Cities filed a request for rehearing on the moratorium issue. By letter order dated June 18, 1991, FERC approved the new settlement agreement between the Cities and I & M, subject to final resolution of the moratorium issue. American Elec. Power Serv. Corp., 55 F.E.R.C. p 61,502 (1991). On July 2, 1991, FERC issued an order denying rehearing of the moratorium matter. Indiana Michigan Power Co., 56 F.E.R.C. p 61,019 (1991). The Cities subsequently filed a petition with this court for review of that decision, reasserting its position that it was entitled under the MFNC to a rate moratorium effective until August 1, 1992.
 
 
 10
 The parties do not dispute that the September 8, 1988, settlement agreement, including the MFNC, is binding on them and that under the MFNC the Cities are entitled to claim the terms of the Wabash Valley settlement if those terms are more favorable to the Cities. The parties disagree, however, on whether the MFNC entitles the Cities to a longer moratorium by virtue of the triennial adjustment provision in the Wabash Valley agreement. FERC claims not, maintaining, as it did below, that the adjustment provision is not equivalent to a rate moratorium and that the Cities and Wabash Valley agreements are so fundamentally different that the Cities should not be permitted to claim benefit of the adjustment provision without adopting the other provisions of the Wabash Valley agreement as well. We, of course, must give deference to FERC's interpretation of the agreements involved and uphold its decision if it reflects reasoned decisionmaking adequately supported in the record. See National Fuel Gas Supply Corp. v. FERC, 811 F.2d 1563, 1569 (D.C.Cir.), cert. denied, 484 U.S. 869 (1987); Transcontinental Gas Pipe Line Corp. v. FERC, 922 F.2d 865, 869 (D.C.Cir.1991). Because we find FERC's construction of the settlement agreements reasonable, we uphold its decision and reject the Cities' challenge.
 
 
 11
 First, we conclude that FERC reasonably found the adjustment provision in the Wabash Valley agreement to be qualitatively different from the moratorium provision in the Cities'. The latter provision prohibited any rate increase at all for a two-year period, at the end of which I & M was free to seek any increase it wished, while the former required that Wabash Valley's rate remain stable from August 1, 1989, through December 31, 1997, a period of almost eight and one-half years, except for an automatic, formulary triennial adjustment and possible adjustment for new tax rates. FERC also reasonably attributed the differences between the two provisions to the particular electrical service each purchaser was to receive. As FERC noted, "while Wabash and Cities were once similarly situated customers both taking requirements service, they are no longer." 56 F.E.R.C. at 61,082. Now, under the terms of the 1988 settlement agreements, "Wabash takes a defined block of power and associated energy at a rate with a fixed demand charge with an every-three-years formulary adjustment, while Cities take requirements service at a traditional stated rate subject to I & M filing for an increase to reflect changing costs." Id. at 61,083 (footnote omitted). Given the obvious relationship between the triennial adjustment provision in Wabash Valley's agreement and the particular service it now receives, we conclude it was reasonable for FERC to reject the Cities' claim for a longer moratorium and that the Cities' petition for review must therefore be denied.
 
 RANDOLPH, Circuit Judge, concurring:
 
 12
 I would deny the petition solely on the ground that FERC reasonably interpreted the adjustment provision in the Wabash Valley agreement as "an every-three-years formulary adjustment" rather than a moratorium. Wabash and I & M did not prohibit price increases for the duration of their contractual relationship; they simply agreed in advance how price increases were to be calculated and imposed. The Wabash Valley agreement did not prohibit all price increases during the period until August 1, 1992; if I & M's federal tax rates change, I & M can raise the rates it charges Wabash Valley--something it would not be able to do under a moratorium. If one takes the Cities' reasoning to its logical conclusion, then on August 2, 1992, a new three-year moratorium went into effect as a result of a new three-year gap before the next formulary adjustment is imposed. Yet even the Cities do not contend that there is a moratorium in effect until 1997 when the Wabash Valley agreement expires.
 
 
 
 *
 Circuit Judge Randolph files a separate concurring statement which follows the memorandum
 
 
 [1]
 Avilla, Blufton, Columbia City, Garrett, Gas City, Mishawaka, Carlisle and Warren
 
 
 [2]
 Niles, South Haven and Sturgis
 
 
 [3]
 The clause also permitted adjustment at any time to reflect changes in I & M's federal income tax rate. The entire provision stated:
 These Firm Power demand charges may be adjusted every three years beginning August 1, 1992 based on 33% of the average annual percentage change for the three prior years of the Producer Price Index for finished goods (PPI) as issued by the Bureau of Labor Statistics, U.S. Department of Labor. Whenever new rates for federal income tax applicable to [Indiana Michigan] become effective, the Firm Power demand charge may be adjusted independent of the PPI adjustment.
 
 
 [51]
 F.E.R.C. at 61,191 n. 12
 
 
 [4]
 The agreement provided for a two-tiered rate reduction. The first reduction was to be effective December 22, 1987 through December 31, 1988, and the second from January 1, 1989 onward. The agreement also provided for refund of overpayments made since December 22, 1987, the date I & M's filed rates had become effective